UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN GAVIN,<br><br>Plaintiff,<br><br>v.<br><br>HILTON WORLDWIDE, INC.,<br><br>Defendant. | Case No. 12-cv-00307-CRB (NJV)<br><br>**ORDER GRANTING MOTION TO COMPEL INDEPENDENT MEDICAL EXAMINATION**<br><br>Re: Dkt. No. 31. |

# INTRODUCTION

Plaintiff Gwendolyn Gavin brought this employment discrimination action against defendant Hilton Worldwide, Inc. ("Hilton") pursuant to federal and state laws. *See* Doc. No. 1, Ex. A. Gavin alleges that starting in June 2010, Hilton failed to reasonably accommodate her chronic, severe depression and that Hilton wrongfully terminated her employment in July 2011. *Id.* at ¶¶ 11, 17, 26. As a result of Hilton's conduct, Gavin alleges, she was unable to continue treatment for her mental health issues, and she suffered such severe emotional distress that she attempted to commit suicide and was hospitalized. *Id.* In order to explore Gavin's claims of past and current emotional distress, Hilton requested that Gavin submit to an independent medical examination ("IME") pursuant to Federal Rule of Civil Procedure 35. After the parties were unable to agree upon the scope of the IME, Hilton moved for an order to compel Gavin to attend an IME.

The district court referred all discovery matters to the undersigned, including Hilton's motion to compel. Doc. No. 35. The district court granted Hilton's motion to file its moving papers under seal, and the undersigned subsequently granted the parties' motions to file their supporting documents under seal as well. *See* Doc. Nos. 30, 42, 54. The motion to compel the IME was heard on April 2, 2012. For the reasons stated below, the undersigned will grant

United States District Court<br>Northern District of California

Hilton's motion to compel the IME.

## DISCUSSION

### I.   BACKGROUND

In response to Hilton's discovery requests, Gavin produced numerous medical records, including psychiatric records.  According to these records, during an August 2010 group therapy session, Gavin expressed anger at one of Hilton's employees, stated that she drove to her work site three times and secretly observed the employee, and relayed her fantasies of taking revenge and harming the employee.  *See* Doc. No. 34, Ex. F.[1]  The psychiatric social worker who attended the group session noted that Gavin stated "repeatedly" that she would "take revenge" on the Hilton employee "in a day, a month or maybe a year," intended to "hurt her" and "cut her" and pictured her "lying on the floor holding her intestines."  *Id.*  Based on Gavin's statements, including her reported non-compliance with medication treatment, the social worker concluded that Gavin represented a risk and recommended that she be evaluated for an involuntary psychiatric hold under California Welfare & Institutions Code section 5150, and a *Tarasoff* warning.[2]  *Id.*  Gavin's psychiatrist and the clinic's critical incident coordinator implemented the 5150 hold but did not issue a *Tarasoff* warning.  Gavin was released on September 1, 2010 and continued with outpatient therapy.  *Id.*  She resumed working at Hilton until she was terminated the following summer.

Arguing that Gavin had placed her medical condition at issue, Hilton attempted to secure Gavin's voluntary participation in an IME.  Gavin agreed to an IME, "provided the parties can stipulate to appropriate parameters."  Doc. No. 34, Ex. A.  Gavin agreed to an IME regarding whether she suffered and continues to suffer emotional distress related to Hilton's conduct and whether she suffered from chronic, severe depression during her employment.  Doc. No. 48 at 2.

---

[1]  All of the papers filed in connection with this motion extensively reference and attach Gavin's psychiatric records and thus have been filed under seal pursuant to N.D. Civil L.R. 79-5.  The court only addresses the confidential materials to the extent necessary to decide the motion.
[2]  *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 431 (1976) ("When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.")

United States District Court
Northern District of California

Negotiations broke down regarding the scope of the IME, and the permissible use of the IME results.  Based on the produced psychiatric records, Hilton became concerned that Gavin could pose a danger to its employees.  Gavin, however, did not want the IME to delve into whether she presented a danger to others.  Doc. No. 34, Ex. C.  Hilton refused to so limit the IME, and also argued that the IME "may be used for any lawful purpose including but not limited to further proceedings if the IME shows there is a safety concern for Hilton employees or others."  *Id*.  Gavin's attorney became concerned that Hilton was using the IME "to build a case for a TRO against Gavin instead of focusing on the issues in this lawsuit."  *Id*.  The parties further disagreed about whether Gavin is entitled to obtain the test materials that will be used during the IME (as opposed to the test results).  When the parties could not resolve these issues, Hilton filed its motion to compel.

## II.    ANALYSIS

### A.    An IME is appropriate in this case.

The court may order a party whose mental condition is in controversy to submit to a mental examination by a suitably licensed or certified examiner.  *See* Fed. R. Civ. P. 35(a).  The court will order an IME only on proper notice, and where the moving party has established good cause exists to order the discovery.  *Id*.

#### i.    Gavin has placed her past and current mental condition in controversy.

A mental condition is "in controversy" when it is itself the subject of the litigation.  *See Tan v. City and County of San Francisco*, 2009 U.S. Dist. LEXIS 21639, *3 (N.D. Cal. Mar. 4, 2009).  Courts typically do not order IMEs when plaintiffs seek "garden-variety" emotional distress damages.  *Id*. at *4.  However, courts will order plaintiffs claiming emotional distress damages to undergo an IME when one or more of the following factors is present: (1) the complaint includes a claim for intentional or negligent infliction of emotional distress; (2) the plaintiff alleges a specific mental or psychiatric injury or disorder; (3) the plaintiff claims unusually severe emotional distress; (4) plaintiff offers expert testimony to support the claim of emotional distress; or (5) the plaintiff concedes that her mental condition is "in controversy" for purposes of Rule 35.  *Id*.; *see also Mandujano v. Geithner*, 2011 U.S. Dist. LEXIS 27986, **4-5

United States District Court
Northern District of California

1  (N.D. Cal. Mar. 7, 2011) (listing same factors).  Here, three of the factors are met.  The complaint

2  includes a claim for intentional infliction of emotional distress.  Doc. No. 1, Ex. A at 24.  Gavin

3  alleges that she suffers from a specific mental disorder (chronic depression).  *Id*. at ¶¶ 22-31.  She

4  further alleges that Hilton's conduct caused her to experience severe adverse mental and physical

5  effects, causing her to be hospitalized "on multiple occasions" and to attempt suicide.  *Id.* at ¶ 11.

6  By basing her claim on a mental disability and seeking damages based on severe mental distress,

7  which she contends continues to this day (*id*. at ¶ 29), Gavin has placed her mental state in

8  controversy.

9       Gavin does not specifically address the five factors listed above.  Instead, she argues that

10  the only issue she has placed in controversy is whether she "continues to suffer from emotional

11  distress" related to Hilton's discriminatory conduct and "to the extent it can be determined . . .

12  after the fact, whether Gavin suffered from chronic, severe depression during her employment."

13  Doc. No. 48 at 9.  As an initial matter, it would appear to the undersigned that, in exploring

14  whether Gavin continues to suffer emotional distress due to Hilton's conduct to this day, the

15  examiner would probe Gavin about her current feelings about Hilton and its employees whom she

16  believed wronged her.  A current desire for revenge, or an expression of desire to harm, might or

17  might not be expressed by Gavin in that context.

18       Because Gavin has alleged a separate claim for intentional infliction of emotional distress

19  (Doc. No. 48 at 8-9), the cases she cites are not on point.  Although the court in *Lahr v. Fulbright

20  & Jaworski LLP*, 164 F.R.D. 204, 211 (N.D. Tex. 1996), held that an IME would not be

21  appropriate where a plaintiff merely alleged emotional pain and mental anguish as a result of

22  employment discrimination, the court held that the plaintiff had put her mental controversy at

23  issue by alleging a claim for intentional infliction of emotional distress, and that the defendant had

24  established "good cause" for an IME on that ground.  *Id*. at 208-210.  The court in *Sarko* allowed

25  the defendant to examine the plaintiff only regarding her current mental condition, having

26  determined that she has "really and genuinely" placed it in controversy by alleging that her

27  depression had a long-term impact on her mental state.  *See Sarko v. Penn-Del Directory Co*., 170

28  F.R.D. 127, 131 (E.D. Pa. 1997).  The court declined to order a broader examination, noting that

4

the *Sarko* plaintiff had not asserted a separate claim for emotional distress. Here, even if Gavin had not alleged a separate claim for emotion distress, she alleges that Hilton discriminated against her because of her mental disability, and that Hilton's conduct caused her to be hospitalized and to attempt to commit suicide. These are not "garden-variety" emotional distress allegations.

> ii.   There is good cause to order the IME.

To establish "good cause" exists for an IME, the moving party generally must offer specific facts justifying the discovery. *See Haqq v. Stanford Hosp. and Clinics*, 2007 U.S. Dist. LEXIS 43675, *3 (N.D. Cal. June 1, 2007). Relevant factors courts consider include "the possibility of obtaining desired information by other means, whether plaintiff plans to prove her claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress." *Id.* (citing cases). The parties' briefs established that the desired IME is relevant and that Gavin is claiming ongoing emotional distress, but they did not address the first two factors. At the hearing, the undersigned asked the parties to elaborate on those first two factors. As to whether Hilton could obtain information regarding Gavin's current emotional distress by other means, Hilton represented that Gavin had last sought in-person medical treatment in "late 2011." Gavin did not contradict Hilton on this point. Hilton therefore cannot depose any of Gavin's treaters in order to ascertain her continuing emotional distress. As to whether she planned to prove her claims through expert testimony, Gavin's counsel stated that "that is still being considered." He noted that Gavin would probably introduce an expert to establish her disability, but was not yet sure whether she would use an expert to establish her continuing emotional distress. In light of the representations made by the parties at the hearing, the undersigned finds that all four "good cause" factors weigh in favor of granting the request for an IME.[3]

---

[3] Moreover, where plaintiffs squarely put their mental condition in controversy and allege continuing emotional distress as a result of the defendant's action, courts frequently merge the "in controversy" and "good cause" requirements and order the IME. *See Ragge v. MCA/Universal*, 165 F.R.D. 605, 609 (C.D. Cal. 1995) ("By claiming ongoing psychiatric harm caused by the . . . defendant, therefore, the plaintiff has placed his mental state in controversy, which in turn constitutes good cause for ordering a psychiatric examination"); *see also Mandujano*, 2011 U.S. Dist. LEXIS 27986, at **7-8 ("The bottom line is that this case is about wrongful termination based on a disability involving alcoholism, and [plaintiff] claims significant emotional distress. . . .

### iii.   The scope of questioning regarding Gavin's current condition.

The central issue here is Hilton's stated intention to use the IME to explore whether Gavin currently poses a danger to any Hilton employees.  Gavin argues that Hilton has "cherry-picked" old records to make the "unfounded assertion" that Gavin is capable of violence towards others.  Doc. No. 48 at 2, 8 (arguing that "it is well established that a party cannot be compelled to submit to [an IME] solely on the basis of unsubstantiated allegations made by the opposing party").  The undersigned disagrees.  Hilton's assertion is not "unfounded," but is based on Gavin's own words as recorded by a mental health professional, words which were deemed sufficiently serious to place Gavin in an involuntary psychiatric hold for several days.  The cases Gavin cites in support of her argument therefore are inapposite.  In *Schlagenhauf v. Holder*, 379 U.S. 104, 117-18 (1964), a bus driver rear-ended a tractor trailer.  The bus passengers sued the bus driver and the owner of the trailer.  In its answer, the trailer owner stated conclusorily that the bus driver was not physically or mentally competent to drive the bus.  The bus driver made no such argument.  The trailer owner argued that the accident was due to the bus driver's neurological or mental defect and petitioned the court for extensive Rule 35 examinations.  The trial court ordered the bus driver to undergo the examinations.  On appeal, the Supreme Court held that there was no good cause to order the examinations: "Nothing in the pleadings or affidavit would afford a basis for a belief that [plaintiff] was suffering from a mental or neurological illness warranting wide-ranging psychiatric or neurological examinations.  Nor is there anything stated justifying the broad internal medicine examination."  Similarly, in *Houghton v. M & F Fishing, Inc.*, 198 F.R.D. 666, 669 (S.D. Cal. 2001), the plaintiff did not include any emotional distress claim in his lawsuit, and did not place his mental, emotional, or psychological condition at issue; it was another party who alleged that the plaintiff suffered from a psychological condition.  The district court in *Houghton* found an IME was not warranted because the plaintiff had not put his mental condition at issue in the action.  Here, Gavin has squarely put her past and present mental condition at issue in the action.

This is good cause for the examination"); *Haqq*, 2007 U.S. Dist. LEXIS 43675, at *5 ("By claiming ongoing severe mental distress and basing her damages claim thereon, [plaintiff] has put her mental state in controversy and [defendant] is entitled to an independent examination").

Hilton's request for an IME is not based on "unfounded" allegations.

Even if Hilton were otherwise entitled to an IME, Gavin argues the motion should be denied because Hilton seeks to "impermissibly expand" the scope of the examination to delve into whether she poses a threat to Hilton employees.  Doc. No. 48 at 7-12.  Gavin's arguments do not persuade.  Gavin first argues that this topic should be excluded from the scope of the IME because she has not placed this mental condition "in controversy."  *Id*. at 7, 9.  As discussed above, Gavin's current feelings and mental state are in controversy in this action.  She has admitted as much.  *Id*. at 9.  Hilton is entitled to delve into Gavin's current feelings and attitude towards Hilton and its employees, and explore logically-related follow-up topics, during the IME.  Gavin also argues the questioning would invade her right to privacy.  However, courts in this district have rejected general privacy challenges to Rule 35 examinations where a party has placed his mental health at issue.  *See Mandujano*, 2011 U.S. Dist. LEXIS 27986, at *15 (citing cases); *Tan*, 2009 U.S. Dist. LEXIS 21639, at *8 (because plaintiff's mental health was key to defense, plaintiff's right to privacy was outweighed by defendant's right to fair trial).  Finally, counsel argues that the IME should not explore the threats because Gavin is not dangerous.  He points out that Gavin reported back to work at Hilton after making the statements, without incident; that neither Hilton nor its counsel have been "subjected to any threats of violence" since her employment was terminated; and that her health care providers concluded in 2010 that her words did not warrant a *Tarasoff* warning.  *Id*. at 5.  The court appreciates that threatening statements alone do not establish that Gavin poses a danger to others.  Such statements "are commonly expressed to psychiatrists and merely pose but do not answer the difficult question of whether or not danger is actually present.  And that question, which is generally difficult for psychiatrists to answer is even more difficult to answer if the subject has never committed an assaultive act."  *Doyle v. United States*, 530 F. Supp. 1278, 1289 (C.D. Cal. 1982).  Counsel's medically unsupported assertion, however, does not placate Hilton.  It also is legally irrelevant.

During oral argument, counsel for Hilton assured the court that the IME would not focus on the 2010 threats.  The court agrees that the examiner should be permitted to explore whether Gavin currently poses a danger to Hilton employees if this line of examination becomes relevant

in the context of exploring Gavin's current mental and emotional state.  The court expects the examiner will act professionally and not subject Gavin to unnecessary inquiries.  It will not micro-manage the examination.  *See Franco v. Boston Scientific Corp.*, 2006 U.S. Dist. LEXIS 81425, *5 (N.D. Cal. Oct. 27, 2006) (declining to exclude "historical matters" from IME because defendant was entitled to explore what effects were attributable to termination, and what effects were due to "long history of depression and psychological problems"); *see also Letcher v. Rapid City Regional Hosp., Inc.*, 2010 U.S. Dist. LEXIS 46959, **15-18 (D. S.D. May 12, 2010) ("The court notes that the entire reason for the IME is to assess whether [plaintiff] really does suffer from a mental condition, whether that condition constitutes a disability if it does exist, and whether defendants caused [plaintiff] severe emotional distress by their actions.  [Plaintiff's] complaint places her mental condition in controversy, as she concedes, and therefore, the court will not limit [the examiner's] exploration of the very issues she herself has placed before the court").

### iv.   Use of the IME results outside of this litigation.

Gavin argues that, should a licensed mental health professional come to the conclusion after examining her that she presents an imminent danger to another human being, her privacy rights and the stipulated protective order in this case preclude the professional from issuing a *Tarasoff* warning.  Doc. No. 48 at 11.  Gavin is mistaken.

First, Gavin's argument seeking to exclude the independent medical examiner from the ambit of California Civil Code section 56.10(a) fails.  The definition of "providers of healthcare" in this statute is not limited to ongoing treating physicians, but includes any person licensed or certified in a number of fields, including psychiatrists.  Cal. Civ. Code § 56.05(j).

Second, *Tarasoff* concludes that the duty to warn is predicated on the existence of a "special relationship": thus, a psychiatrist who knows a patient poses a threat to another person has a duty to warn the potential victim, but police officers do not even if they are aware of the threat.  17 Cal. 3d at 444; *see also Koepke v. Loo*, 18 Cal. App. 4th 1444, 1457 (1993) ("[W]hile professionals may have a duty to warn or take precautions to prevent injury to known, or even unknown, victims of their dangerous patients, this duty is based upon special professional

United States District Court
Northern District of California

1  expertise and is not extended to nonprofessionals attempting to assist friends or subjects with

2  problems"). *Tarasoff*, however, does not address whether an independent examiner has a "special

3  relationship" with the subject of the IME, such that the duty to warn would arise at common law.

4  Gavin provides no authority for her proposition that an examiner does not have such a

5  relationship, and the court has found none.  In fact, the Tenth Circuit has held that a Colorado

6  statute limiting the duty of mental health professionals to warn potential victims applied with

7  equal force to an independent medical examiner as it did to treating mental health providers.  *See*

8  *Fredericks v. Jonsson*, 609 F.3d 1096, 1103-04 (10th Cir. 2010) (applying the *Tarasoff* "special

9  relationship" doctrine and concluding that "the relevant analysis conducted by the mental-health

10  provider--determining whether the person being evaluated is a danger to others--would seem to be

11  the same whether or not the person is being treated by the provider").  Here, the examiner's

12  relationship with Gavin, while limited in time, would be based on the examiner's "special

13  professional expertise" and give rise to a "special relationship" and a duty to warn.  Importantly,

14  even absent a "duty" to warn, California law provides exceptions to the psychiatrist-patient

15  privilege when a psychiatrist believes the patient poses a danger to others.  *See* Cal. Civ. Code §

16  56.10(c)(19)[4]; Cal. Evid. Code §§ 1010(a)[5], 1024[6].

17        Third, the law balances the privacy rights of patients with the risk they pose to others and

18  requires a warning only when (for example) a psychiatrist determines that the patient "presents a

19  serious danger of violence to another." *Tarasoff*, 17 Cal. 3d at 551.  Under *Tarasoff*, a psychiatrist

20  in such circumstances "incurs an obligation to use reasonable care to protect the intended victim

21  _____

22  [4] "The information may be disclosed, consistent with applicable law and standards of ethical
    conduct, by a psychotherapist, as defined in Section 1010 of the Evidence Code, if the

23  psychotherapist, in good faith, believes the disclosure is necessary to prevent or lessen a serious
    and imminent threat to the health or safety of a reasonably foreseeable victim or victims, and the

24  disclosure is made to a person or persons reasonably able to prevent or lessen the threat, including
    the target of the threat."

25  [5]  Including in definition of "psychotherapist,"  "A person authorized to practice medicine in any
    state or nation who devotes, or is reasonably believed by the patient to devote, a substantial

26  portion of his or her time to the practice of psychiatry."
    [6] "There is no privilege under this article if the psychotherapist has reasonable cause to believe

27  that the patient is in such mental or emotional condition as to be dangerous to himself or to the
    person or property of another and that disclosure of the communication is necessary to prevent the

28  threatened danger."

against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances." *Id*. The duty does not arise unless the patient is determined to "present a serious danger of violence to another." Similarly, under California law, the psychiatrist may break the privilege when she believes the patient poses "a serious and imminent threat" or that the patient is "dangerous" and that "disclosure is necessary to prevent threatened danger." Gavin provides no authority for the suggestion that either her right to privacy or the Stipulated Protective Order prevent a licensed medical professional from issuing a warning if the examiner believes Gavin presents a threat to another human being.

  **B.**  **The IME test materials.**

   The parties are in agreement that the IME test results must be produced. Doc. No. 55 at 9. In addition, Gavin seeks production of the test materials used during the IME. *See* Doc. No. 48. Hilton represents that it does not have the right to distribute the materials associated with "the tests and examinations which are likely to be administered" to Gavin. Doc. No. 31 at 14. The company that created these documents considers them highly confidential and proprietary and considers copying of such materials to constitute copyright infringement. *See* Doc. No. 31 at 14; Doc. No. 32, Ex. A (attaching policies). Because Hilton does not have custody or control over these test materials, it cannot produce them to Gavin. Gavin nonetheless can obtain them by subpoenaing the company that produces the materials and/or deposing the examiner who administers the test.

  **C.**  **Hilton's request for attorneys' fees and costs.**

   Hilton asks the court to award it $5,000 for reasonable fees and costs incurred in the preparation of its motion to compel the IME. Doc. No. 55 at 10. The documents filed by the parties establish that Gavin did not refuse to submit to an IME, but disagreed about the scope of the IME and met and conferred extensively regarding this and other related topics. Although the court ultimately agrees that Gavin's requested limitations are not appropriate, it finds no evidence that Gavin's conduct was "in bad faith, vexatious[], wanton[], or oppressive." *Id*. The parties'

United States District Court
Northern District of California

argument regarding the completeness of document production is not presently before the court, and thus is not a basis for sanctions here.  Moreover, Hilton's request for legal fees does not comply with Civil Local Rule 7-8 and the court's Standing Order at ¶ 12(d).  Hilton's request for fees is denied.

## CONCLUSION

For the reasons stated above, the court grants Hilton's motion to compel a Rule 35 examination of Gavin as follows:

<u>Details and Conditions of IME</u>

Plaintiff Gwendolyn Gavin shall submit to a mental examination as follows:

EXAMINING PHYSICIAN:  Dr. Stuart M. Pickel

LOCATION OF EXAMINATION:

> St. Francis Memorial Hospital Medical Office Bldg
> 909 Hyde Street, Suite 425
> San Francisco, California 94109

> TELEPHONE NUMBER:  (415) 928-3277

The examination shall be scheduled based on the earliest availability of Ms. Gavin and Dr. Pickel, and shall continue so long as it is reasonably required.  Dr. Pickel's examination shall include, but not be limited to, the following: a clinical interview including: gathering of identifying information; inquiries into personal, occupational, educational, religious, drug and alcohol, legal, family and marital history; taking a history of psychiatric complaints as well as treatment and diagnosis and prognosis for the future; and taking a formal mental status examination; as well as any other subjects Dr. Pickel deems necessary to make a determination in this case. Dr. Pickel's examination will also include an interview regarding any and all injuries, effects, problems or conditions which are claimed to have resulted from or been sustained by Plaintiff as a result of the incidents giving rise to this lawsuit, whether they be psychological in nature or physical in nature. Dr. Pickel may exercise his discretion and judgment to perform exams and testing as he deems appropriate.

Plaintiff shall provide a minimum of one week notice to change the appointment without

United States District Court
Northern District of California

11

1    charge.  In the event Plaintiff does not provide one week notice, or if Plaintiff fails to attend on the

2    scheduled date for a reason other than an unforeseeable incapacity illness (not agoraphobia nor her

3    "chronic and severe depression"), a nonappearance fee will be charged to Plaintiff.

4          To aid his complete evaluation of the case, Dr. Pickel will call upon a clinical

5    psychologist, to assist him in the examination, who will conduct psychological testing on the date

6    and time specified above.  The psychological testing will include subtests up to and including the

7    entire WAIS-IV, the MMPI-2, and the Rorschach Inkblot Test.  Except for the MMPI, subtests

8    and subtest results will not be released to the parties or their attorneys.  However, all subtests and

9    subtest results shall be exchanged between the experts disclosed by the parties, pursuant to the

10   Federal Rules and a written agreement that such shall not be released due to the proprietary nature

11   of such subtests.

12         Both the clinical psychologist appointment and the appointment with Dr. Pickel shall take

13   approximately five to six hours.  Breaks for personal comfort or necessity may be taken as needed.

14   Only the examining doctor and the Plaintiff to be examined shall be present at each appointment.

15   Audio-recording will be permitted.  In some cases, because the examination starts late, or because

16   of the complexity of the history or issues, or because of communication problems, the examination

17   might require more time.  If the examining doctors are unable to complete the examination on the

18   scheduled day, Plaintiff shall cooperate with Defendant and Dr. Pickel in arranging a mutually

19   convenient date and time as soon thereafter as possible on which to continue the mental

20   examination.

21         Plaintiff shall submit to an IME by Dr. Pickel (and such assistants and colleagues as Dr.

22   Pickel may call upon to assist him) no later than within 30 calendar days of this Order, or as the

23   Parties may otherwise agree, before any in-person discovery or party meeting shall take place.

24   //

25   //

26   //

27   //

28   //

United States District Court
Northern District of California

12

1    The results of this examination may be used in this litigation, as well as for any lawful

2  purpose outside of this litigation, to the extent allowed by law.

3

4    **IT IS SO ORDERED**.

5

6  Dated:  April 5, 2013

7  _____

8  Nandor J. Vadas
   United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28